J-S25001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M.-D.J., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.F., MOTHER | : : : : : : : | |
| | : | No. 950 EDA 2021 |

Appeal from the Order Entered April 13, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000365-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: K.S.A.J., JR., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.F., MOTHER | : : : : : | |
| | : | No. 954 EDA 2021 |

Appeal from the Order Entered April 13, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000366-2020

BEFORE:   BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                Filed: September 9, 2021

K.F. (Mother) appeals from the orders, entered April 13, 2021, that granted the petitions filed by the Philadelphia Department of Human Services (DHS) to involuntarily terminate Mother's parental rights to A.M.-D.J. (Child 1) (born in January of 2016) and K.S.A.J., Jr. (Child 2) (born in January of

_____

[*] Retired Senior Judge assigned to the Superior Court.

2017) (collectively Children) pursuant to Sections 2511(a)(2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, and to change the permanency goal from reunification to adoption under the Juvenile Act, 42 Pa.C.S. § 6351.[1]  We affirm.

The trial court provided the following facts and relevant history of this matter with regard to subsection 2511(a)(2), stating:

> Children have been involved with DHS since May 25, 2018, when a validated GPS [General Protective Services] report stated that Father left the Children unattended at a food market for about an hour.  This report was not the first GPS report involving Mother.  Mother had prior DHS history dating back to 2016; when Mother tested positive for drugs during her pregnancy with Child 1.  DHS also received a CPS [Child Protective Services] report on May 25, 2018, naming both parents perpetrators of medical neglect for missing medically-needy Child 2's specialist appointments.
>
> Mother's SCP [Single Case Plan] objectives remained substantially the same throughout the life of the case.  Mother's objectives were to: attend drug and alcohol treatment at Consortium, for individual therapy, group therapy, and methadone services; participate in supervised visits with Children; attend both Children's medical appointments; [l]earn medical training for Child 2's medical conditions; complete a PCE [Parenting Capacity Evaluation] and recommendations, then be reevaluated once all recommendations were completed; complete therapy through JFK[, a therapy provider,] regarding the PCE recommendations, and medication management; provide proof of employment and stable income; provide stable housing; complete a parenting course; and complete random drug screens.  Mother was aware of her objectives, as the CUA [Community Umbrella Agency] Case Manager made Mother aware of her objectives by mail, in person, and during supervised visits.  Mother testified to reviewing the SCP when it was presented to her.

---

[1] By *per curiam* order of this Court, dated May 24, 2021, Mother's appeals were consolidated.  **See** Pa.R.A.P. 513.  Children's father is not a party to this appeal.

Mother did complete a PCE in January 2019. The recommendations were incorporated into Mother's SCP objectives. Mother was to be reevaluated once the initial PCE recommendations were completed, but the addendum never occurred because Mother did not complete the recommendations. The mental health therapy recommendation suggested that Mother's therapy address her distortions in thinking and behaviors that contributed to the minimization and rationalization of her role in the Children's out-of-home placement. It was also recommended that Mother's therapy address her history of domestic violence victimization and the impact this had on prior decisions. The PCE also recommended that Mother's treatment develop a plan to increase future parenting capacity, including financial and/or employment, housing, and psychoeducation on appropriate parenting styles and child development, with resources to be provided. A copy of the PCE was provided to Mother's therapist. Since being assigned to the case in 2019, the CUA Case Manager did not receive any treatment plan or progress reports, despite court orders and CUA requests. The CUA Case Manager requested these documents from both Mother's treatment providers and Mother directly. The CUA Case Manager also requested Mother sign release forms for the records as well. Mother testified that she had signed releases "numerous times" but had not explained to the CUA Case Manager why she had not provided the documents. By the time of the termination trial, the CUA Case Manager testified that Mother was not still addressing the therapeutic needs outlined in the PCE and SCP. The CUA Case Manager testified that Mother received individual and group therapy at Consortium, but Consortium had indicated they could not accept Mother on everything the PCE recommended. JFK was identified as an alternate treatment provider. Mother self-referred to the provider but did not attend for her PCE-recommended individual therapy. Mother attended JFK for medication management and a psychiatric evaluation, not individual therapy as instructed. Mother completed a psychiatric evaluation in January 2020. The evaluation recommended mental health therapy, but [M]other did not follow through. Mother testified to being on the waitlist for mental health and domestic violence treatment at JJPI and stated she would be starting within three weeks of the termination trial. The PCE was completed in January 2019, and a psychiatric evaluation was completed in January 2020. When asked why there was a delay in receiving the recommended treatment, Mother claimed she was unaware she needed to complete the recommendations. The recommendations

were incorporated into Mother's SCP, of which Mother was aware and testified to reviewing. The CUA Case Manager testified that Mother completed approximately half of the PCE recommendations.

Mother was also to avail herself to CEU [Clinical Evaluation Unit] for random drug screens and monitoring. Throughout the 34-month life of the case, the CUA Case Manager had [a] record of Mother attending one random screen at CEU. The CUA Case Manager had [a] record of some random screens from Mother's treatment at Consortium. The CUA Case Manager was aware of Mother's engagement with methadone maintenance treatment through Consortium, but was unaware of Mother's dosage. Consortium did not provide the CUA Case Manager with a treatment plan or progress report, as requested. The CUA Case Manager requested Mother supply the records, but Mother did not do so, nor did she explain why she could not provide the records. CEU also had issues obtaining records from Consortium. Obtaining records regarding Mother's drug treatment was a consistent issue since the CUA Case Manager was assigned in 2019, despite court orders and repeated requests. Ultimately[,] the trial court found that there were no validated records to indicate whether Mother was engaging with her drug and alcohol objective, or if she had completed the objective.

Mother had referrals to ARC [Achieving Reunification Center] for parenting, housing, and employment programming. Mother did complete a regular parenting course in April 2019. However, the CUA Case Manager received a letter from ARC stating that Mother's referral was closed in November 2020 for unsuccessful parent engagement. Mother did not complete employment or housing programming through ARC. Upon the CUA Case Manager's last contact with Mother in January 2021, Mother reported receiving unemployment benefits but never provided proof of these benefits. The CUA Case Manager was not able to complete a home assessment since being assigned in 2019. Mother has lived at the same address with Maternal Grandfather since the CUA Case Manager's assignment in 2019. The CUA Case Manager requested both Mother and Maternal Grandfather avail themselves for a home assessment and clearances, but neither complied with the request. Mother would schedule a meeting to do the home assessments but did not keep the appointments[] and would cancel while the CUA Case Manager was on her way to the appointment. The CUA Case

Manager also attempted to do pop-up visits, but was still unsuccessful in having contact with Mother.

Mother did not obtain medical training for Child 2's medical needs, and only attended one medical appointment for each Child throughout the life of the case. Mother was made aware of all medical appointments by CUA, as well as CHOP's [Children's Hospital of Philadelphia] database. The CUA Case Manager testified that Mother had not attended any medical appointments since they were assigned to the case in 2019. Child 2 has a G-tube. Mother is aware of Child 2's G-tube but did not obtain the necessary medical training. CHOP was hesitant to provide the training unless reunification would happen within three months, as they did not want her to lose the training. The CUA Case Manager spoke with a supervisor at CHOP and they agreed to do the training. By the time of the termination trial, Mother had not obtained any medical training for Child 2's special medical needs.

Trial Court Opinion (TCO), 6/14/2021, at 10-13 (citations to the record omitted). The court further discussed the fact that "Mother never graduated beyond supervised visitation with Children." *Id.* at 13. Thus, the court concluded that because of Mother's incapacity to parent, termination under subsection (a)(2) was proper.

DHS filed the petitions seeking to involuntarily terminate Mother's parental rights and to change Children's permanency goals from reunification to adoption on October 22, 2020. The termination hearing took place on April 13, 2021, by virtual means. Mother attended the hearing and provided testimony. DHS presented the testimony of Britney Fisher, the CUA Case Manager. Additionally, Barbara Berry, the child advocate, informed the court that due to their age, neither child understands the ramifications between reunification and adoption. Ms. Berry also explained that a paternal uncle, who lives in Georgia, has had visitation with Children and is a possible

adoption resource. At the conclusion of testimony, the court announced its decision to terminate Mother's parental rights and change Children's goals to adoption.

Mother filed her appeals and her Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal.[2] Mother now presents the following issues for our review:

> 1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, K.F.[,] pursuant to 23 Pa.C.S.[] section[] 2511(a)(1)[,] where Mother presented evidence that she tried to perform her parental duties.
>
> 2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, K.F.[,] pursuant to 23 Pa.C.S.[] section[] 2511(a)(2)[,] where Mother presented evidence that she has remedied her situation by maintaining housing, taking parenting classes and intensive drug treatment and mental health counselling[,] and has the present capacity to care for her child.
>
> 3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, K.F.[,] pursuant to 23 Pa.C.S.[] section[] 2511(a)(5)[,] where evidence was provided to establish that the child was removed from the care of … Mother and Mother is now capable of caring for her child.
>
> 4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, K.F.[,] pursuant to 23 Pa.C.S.[] section[] 2511(a)(8)[,] where evidence was presented to show that Mother is now capable of caring for her children after she completed parenting classes, secured and maintained

---

[2] Mother's appeals and her concise statements were filed *pro se* although the trial court had appointed new counsel to represent Mother for these appeals. By order of the trial court, the newly appointed attorney was directed to file a supplemental 1925(b) statement, which was accomplished in a timely manner.

housing[,] and continues in her dual diagnosis drug and mental health treatment programs.

5. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, K.F.[,] pursuant to 23 Pa.C.S.[] section[] 2511(b)[,] where evidence was presented that established the children had a close bond with their Mother and they had lived with their Mother for … most … of their lives. Additionally, Mother maintained that bond by visiting with her children when she was permitted to visit them.

Mother's brief at 7.[3]

We review an order terminating parental rights in accordance with the following standard:

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (*quoting **In re S.H.**,* 879 A.2d 802, 805 (Pa. Super. 2005)). Moreover, we have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" *Id.* (*quoting **In re J.L.C. & J.R.C.**,* 837 A.2d 1247, 1251 (Pa. Super. 2003)).

_____

[3] We recognize that Mother has not raised any issues related to the changing of Children's goals from reunification to adoption.

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

Mother's issues pertain to Section 2511 of the Adoption Act, which governs the termination of parental rights and requires a bifurcated analysis. In addressing her claims, we are guided by the following:

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511, other citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *R.N.J.*, 985 A.2d at 276.

Instantly, the trial court terminated Mother's parental rights pursuant to Sections 2511(a)(2), (5), (8), and (b).[4]  We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm.  *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).  Here, we analyze the court's decision to terminate under Section 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

---

[4] Although DHS requested the court terminate Mother's rights under Section 2511(a)(1), (2), (5), (8) and (b), the court ordered the termination pursuant to Section 2511(a)(2), (5), (8) and (b).  Therefore, Mother's first issue that addresses Section (a)(1) is immaterial to the case.

23 Pa.C.S. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.[ ] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Relative to Section 2511(a)(2), Mother argues that although she may not have evidenced the capacity to care for Children in the past, she presently has the capacity to do so. Specifically, Mother contends that she "completed her … goals of parenting classes, visitation, drug treatment, mental health treatment and medication management." Mother's brief at 17. She further asserts that she visited Children when permitted at the agency, that she continued her drug and mental heath treatment, and that all her drug screens were negative. Mother also indicates that she "has housing[] and can now provide a safe home for herself and her [C]hildren." *Id.*

- 10 -

Our inclusion of the portion of the trial court's opinion in this memorandum provides the facts relied upon by the court to conclude that DHS met its burden relating to Section 2511(a)(2). Furthermore, based upon our review of the record, it is evident that the court's findings are supported by the evidence presented. Moreover, its conclusion that Mother has not, and cannot, provide Children with the essential parental care, control and subsistence necessary for their mental and physical well-being, and that Mother is unable to remedy the causes of her parental incapacity, neglect or refusal are not in error. Thus, the statutory grounds for termination under Section 2511(a)(2) were met by DHS and Mother is not entitled to relief.

Having resolved that grounds for termination existed under Section 2511(a)(2), we now proceed to the second part of the analysis under subsection (b). In reviewing the evidence in support of termination under Section 2511(b), our Supreme Court stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "intangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1992)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). With respect to the bond analysis pursuant to Section 2511(b), the Court explained, "the mere existence of a

bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition." *Id.* "Common sense dictates that courts considering termination must also consider whether the children are in a preadoptive home and whether they have a bond with their foster parents." *Id.* at 268 (citation omitted). Moreover, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind. Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail, … the result, all too often, is catastrophically maladjusted children." *Id.*

Mother argues that evidence must be presented concerning the effect that the termination of the parental rights would have on the children. She contends that "subsection 2511(b) requires consideration of the development and emotional needs of the children." Mother's brief at 20. Specifically, she avers that Children lived with her for the first part of their lives and that they have a bond with Her. Therefore, she believes that she "should have been provided with supervised visits outside of the caretakers homes so that she could continue to have consistent visitation with her children." *Id.*

Again, we conclude that the record supports the trial court's decision to terminate Mother's parental rights pursuant to subsection (b). In its opinion, the trial court stated the following with regard to this subsection:

> Mother has not been consistent or compliant with her visitation with Children for the life of the case. Mother never graduated beyond supervised visitation with Children. Child 1's foster parent informed the CUA Case Manager that Mother visited Child 1 two to three times since January 2021. Mother visited Child 2 three

to four times since January 2021. The CUA Case Manager testified that Mother was more consistent with visitation when the visits were supervised at the agency, but once they [became] supervised by the caregivers, her visits became more sporadic. Both Children's foster parents reported to the CUA Case Manager that they would attempt to contact Mother through phone calls and text messages to set up visits, but Mother was not compliant in actually attending visits with Children. Once the COVID-19 pandemic began, Mother was offered virtual visits but was still not compliant. An outcome specialist from CUA would go to Mother's home to assist Mother with virtual visitation, but those visits stopped when Mother stopped answering the outcome specialist's phone calls. Mother claimed she was inconsistent with visitation due to conflicting schedules and other people not answering her contact attempts. The CUA Case Manager reported that Mother did not consistently avail herself to CUA, and Mother admitted this in her own testimony. Mother would reportedly cancel visits and meetings thirty-minutes prior to their scheduled time. The CUA Case Manager could not speak with Mother about the visitation issue, as Mother did not consistently avail herself. The CUA Case Manager testified that Mother has positive interactions with both Children. However, … Children share a primary parental relationship with their resource parents, not Mother. The CUA Case Manager testified that Mother has a limited relationship with her Children due to sporadic visitation and does not have a parental bond with Children. Both Children look to their resource parents to meet their needs. Child 2 has particular medical needs. Mother is aware of these needs but has not taken the necessary steps to obtain medical training to safely parent Child 2. The CUA Case Manager was aware of Mother attending only one of Child 2's medical appointments throughout the thirty-four month life of the case. The CUA Case Manager testified that no irreparable harm would be done by terminating Mother's parental rights to either Child. While Mother has positive interactions with both Children, there is not a parental bond present. Children have been in care for thirty-four months. Because there is no apparent or beneficial parental bond to preserve, it is in Children's best interest to terminate Mother's parental rights and so be freed for adoption. Due to Mother's noncompliance and lack of consistent participation in visitation, Mother has not created a parental bond with either Child. The record establishes by clear and convincing evidence that termination would not sever an existing and beneficial relationship between Mother and Children. The trial court also [explored] whether there was a need to appoint TPR

- 13 -

legal counsel for Children. There was no conflict in the child advocate representing both legal and best interests due to the immaturity of Children and Child 2 being nonverbal. Child 1 is five years old and Child 2 is four years old. Neither Child was able to understand the difference between reunification and adoption. The trial court's termination of Mother's parental rights to Children under 23 Pa.C.S.[]. § 2511(b) was proper and there was no error.

TCO at 21-22 (citations to the record omitted).

As there is competent evidence in the record that supports the trial court's credibility and weight assessments regarding Children's needs and welfare, and the absence of a parental bond with Mother, we discern no error or abuse of discretion in the court's determinations under Section 2511(b). *See In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012). Accordingly, we affirm the orders terminating Mother's parental rights to Children.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/21